## THE I. C. HARRIS.

### HAIMARK and another *v.* THE I. C. HARRIS.

*(Circuit Court, E. D. Texas. November, 1886.)*

1. RULES OF NAVIGATION—REV. ST. 4233, RULES 20, 23.
   Rules 20 and 23 of section 4233, Rev. St. U. S. are to the effect that, when a steam-vessel and a sail-vessel are proceeding in such directions as to involve risk of collision, the steam-vessel shall keep out of the way of the sail-vessel, and the sail-vessel shall keep its course. These rules apply strictly

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

in all cases arising in an open sea; but whether they should be strictly applied in narrow channels or restricted harbors depends upon the existing dangers of navigation, and the special circumstances attendant upon the case. See rule 24, same section.

2. COLLISION—BOTH PARTIES TO BLAME.
    Facts stated, by which libelant is found to be in fault for not exhibiting a torch as required by section 4234, Rev. St., and libelant for not having a sufficient lookout.

Admiralty Appeal.
*Wheeler & Rhodes*, for libelants.
*Waul & Walker*, for claimant.

PARDEE, J. This case is one of collision in the night-time in Bolivar channel, leading into Galveston harbor, between the schooner Pat Christian coming in, and the steamer I. C. Harris going out. The libelants allege that the collision was the sole fault of the steamer, and the claimant insists that the schooner was alone in fault. The libelants rely on section 4233, Rev. St., rules 20, 23, to the effect that, when a steam-vessel and a sail-vessel are proceeding in such directions as to involve risk of collision, the steam-vessel shall keep out of the way of the sail-vessel, and the sail-vessel shall keep its course. That these rules apply strictly in all cases arising in an open sea there is no doubt; but whether they should be strictly applied in narrow channels or restricted harbors depends upon the existing dangers of navigation, and the special circumstances attendant upon the case. See rule 24, same section.

There is evidence in this case tending to show that when the master and quartermaster of the steamer first saw the lights of the schooner, that the helm of the steamer was hard a-port, and that she was as near the starboard shore as she could safely go; and the weight of the evidence in the case is to the effect that if the schooner had ported her helm, instead of maintaining her course, the collision would have been avoided. It is probable, therefore, that this case might be disposed of adversely to the libelants upon a proper construction and application of the above-cited rules.

The case, however, is too plain to go into that matter. The weight of the evidence is that the schooner had her red and green lights properly displayed,—in fact the proctor for claimant so admits. The night was dark, but not foggy; and there was apparently nothing to hinder such lights from being seen, by a proper lookout, for a distance of half a mile, while every man aboard the Harris at the time of the collision whose testimony has been taken, swears that the schooner and her lights were not seen until the schooner was within less than 100 yards, and it was too late for the steamer to avoid the collision. I think it follows that the steamer had no proper lookout. It is true that the quartermaster was in the pilot-house, and the master was on the upper deck in front of the pilot-house, with his glasses; but the crew were catting the anchor, and it is very probable that the master was overlooking that operation. He swears he did not see the schooner until she was within 70 to 75 yards. The quartermaster, who was steering the Harris, did

not see the schooner unt'l she st'uck the Harris, and first knew of her vicinity by hearing voice) under the bow. The fault of the steamer is apparent without considering her responsibility under rules 20 and 23, *supra*.

Section 4234, Rev. St., provides that all sail-vessels shall be provided with proper signal lights, and that every such vessel shall, on the approach of any steam-vessel during the night-time, show a lighted torch upon that point or quarter to which such steam-vessel shall be approaching, and a penalty is imposed for violating these provisions. In this case no torch-light was shown by the schooner, nor was one ever shown to be aboard, and therefore the schooner was clearly in fault. The libelants contend that showing a torch-light in this case would have done no good, and that such failure did not contribute to the collision. This contention is not well founded. *Non constat* that the unwary master of the Harris would not have seen the schooner's lights in time had they been reinforced, as the law required, with a torch-light. If the case were one where the court could find from the evidence that the omission on the part of the schooner to show the torch-light did not contribute to bring on the collision, then the argument of libelant's proctor, supported, as it is, by numerous adjudged cases, might carry his case; but the court cannot so find, because it is now impossible, under the state of facts developed by the evidence, for any one to say what would have been the conduct of the steamer had the schooner shown more lights. The steamer was in fault because her officers did not see the lights that the schooner did show, and it seems equally clear that the schooner was in fault in not showing all the lights that the statutes require. That the greater fault was with the steamer may be conceded. At the same time the schooner ought not to deny the steamer the benefit of the arbitrary statutory rule, that sail-vessels approaching a steam-vessel in the night-time shall show a torch-light, while claiming the full benefit of the equally arbitrary rule that steam-vessels shall keep out of the way of sail-vessels. For adjudged cases as to the necessity of complying with the rule as to showing a torch-light, see *The Hercules*, 1 Fed. Rep. 925, 17 Fed. Rep. 606; *The John H. Starin*, 2 Fed. Rep. 100; *The Margaret* v. *The C. Whiting*, 3 Fed. Rep. 870; *The Algiers*, 21 Fed. Rep. 343; *The Oregon*, 27 Fed. Rep. 751; *The Eleanora*, 17 Blatchf. 88.

In those cases where the sail-vessel was not held responsible for failure to show the torch-light it will be found that in each case the court found that the failure did not contribute to the collision; but the general rule in the circuit courts has been to hold such failure inexcusable.

Both vessels being in fault in this case, it follows that the damages should be divided. The proof shows that the damages to the schooner amounted to $415, and to the steamer $432.70,—near enough equal to permit the court to do substantial justice in the case by a decree dismissing the libel, and dividing the costs.